# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENT C., by and through his guardians, | : | |
| John H. and Tracey H., and | : | |
| JOHN H. and TRACEY H. individually and | : | |
| on their own behalf, of Morrisville, Pennsylvania | : | Civil Action |
| | : | |
|     Plaintiffs | : | |
| | : | |
| v. | : | No. |
| | : | |
| PENNSBURY SCHOOL DISTRICT | : | |
| 134 Yardley Ave., | : | |
| Fallsington, Pennsylvania 19054 | : | Jury Trial Demanded |
| | : | |
|     and | : | |
| | : | |
| THE VALLEY DAY SCHOOL | ; | |
| 300 Allendale Drive, | : | |
| Morrisville, Pennsylvania 19067 | : | |
| | : | |
|     Defendants. | : | |

## COMPLAINT

### I.  Introduction

1.     During the 2020-2021 school year, Plaintiff, Vincent C., then a 14-year-old boy, was groomed by, and then repeatedly sexually assaulted by, Jerrilynne Derolf, a teacher's aide of Defendant Valley Day School.

2.     Defendant Pennsbury School District ("School District") placed Vincent at Defendant Valley Day School because he is a child with an Emotional Disturbance and a history of major trauma.

3.     The Defendants knew that growing up, Vincent was abandoned repeatedly by his parents. Derolf picked Vincent to groom and sexually assault because this abandonment made him extremely vulnerable and because she had access to—and was required to read—his School

District-issued IEP (Individualized Education Program) which stated that his disability-related needs included that "the language he uses is very sexual and inappropriate for a school setting."

4.    Derolf openly groomed Vincent in the fall of 2020 by using their Zoom classroom on Vincent's school-issued Chromebook computer for long (one hour), private conversations with Vincent. She continued this grooming in the Spring of 2021, by taking Vincent on long walks around campus, which she admitted that the other teachers and staff observed and found unusual and troubling.

5.    Then, in June and July of 2021, with the regular school year and then Vincent's Extended School Year still in session, Derolf tacitly encouraged, persuaded, and eventually strongarmed Vincent into having sex with her by possessing a gun and showing him the gun during their various encounters.

6.    On July 15, 2021, Derolf confessed to her crimes, was incarcerated with extensive region-wide publicity, but was predictably released on bail several days later with access anew to Vincent.

7.    The Defendants took no action to prevent further contact and abuse by Derolf as required by Title IX of the Educational Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131; and 42 U.S.C. § 1983 ("Section 1983").

8.    Although on notice of the sexual assaults and abuse described herein, the Defendants failed to: (a) inform Vincent of his rights under Title IX; (b) initiate the mandatory Title IX investigation and grievance processes; (c) take reasonable, effective, and swift action to provide supportive measures to Vincent; (d) prevent the recurrence of sexual assaults and abuse; (e) implement corrective measures; or (f) provide increased security measures.

9.     In addition, although on notice of Vincent's past history of trauma, psychological and emotional needs, inability to respond appropriately to sexual situations, and Derolf's sexual grooming and abuse and the obvious, serious psychological trauma that would flow from such abuse, the Defendants failed to immediately: (a) undertake a special education reevaluation, (b) amend Vincent's Specially Designed Instruction; (c) update the present levels or goals of his IEP; (d) provide him with increased accommodations and Related Services, counseling, instruction in self-advocacy and self-protection, and family training; (e) implement available steps to prevent electronic and other communications/contact from Vincent's abuser and/or to forward communications to trusted family members; (f) create a safety plan and crisis plan for Vincent and his family, and (g) provide guidance for increased security despite knowledge that Derolf could post bail.

10.     The Defendants' continuing failures enabled Derolf to continue to groom and sexually assault Vincent.

11.     When Vincent's Grandparents and guardians, Plaintiffs John H. and Tracey H. ("Grandparents"), pleaded with police to check on his safety, the police located Derolf with Vincent; as police approached them, Derolf pulled out a handgun and shot herself to death in the presence of Vincent.

12.     Not surprisingly, Vincent is now diagnosed with Post-Traumatic Stress Disorder.

13.     This action is brought by minor Plaintiff Vincent C. and his Grandparents and guardians, Plaintiffs John H. and Tracey H. (collectively, the "Family"), against Defendants under Title IX for their deliberate indifference to sex-based discrimination, denial of benefits, and discrimination; claims for denial of benefits and discrimination under Section 504 and the ADA; actions against all Defendants pursuant to Section 1983 to enforce the protections of Title IX, the

ADA, and the Equal Protection Clause of the Fourteenth Amendment; and state tort claims against Defendant Valley Day School. In addition, this Complaint asserts a Loss of Consortium claim against all Defendants for Grandparent Plaintiffs who have lost the companionship of and relationship with their grandson.

## II.    **Parties**

14.    At all times relevant to this Complaint, the Plaintiffs resided within the Pennsbury School District and within the Eastern District of Pennsylvania.

15.    The School District was the Local Education Agency responsible for Plaintiff Vincent C.'s education at all times relevant to the Complaint.

16.    The School District is located at 134 Yardley Ave., Fallsington, Pennsylvania, 19054 which is within the Eastern District of Pennsylvania.

17.    The Defendant School District is the recipient of several sources of federal funds.

18.    The Defendant School District is responsible for providing special education and related services to all eligible children within its borders. It is responsible for honoring the substantive and procedural rights of eligible children and their parents under Title IX, Section 1983, Section 504 of the Rehabilitation Act, the ADA, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and Chapters 14 and 15 of Title 22 of the Pennsylvania Code.

19.    The Defendant School District is a public entity responsible for compliance with the guarantees of Title IX and Title II of the ADA. 42 U.S.C. § 12132.

20.    At all times relevant to this Complaint, Defendant Valley Day School was located at 300 Allendale Dr., Morrisville, Pennsylvania, 19067 which is within the Eastern District of Pennsylvania, and was a recipient of federal funds.

21.    The Defendant Valley Day School was the private school entity responsible for providing Vincent with a safe, appropriate, and comprehensive educational program, jointly and severally with the Defendant School District, and was also fully responsible to implement and fulfill the requirements of Title IX, Section 504 of the Rehabilitation Act, the ADA, IDEA, Section 1983, and Chapters 14 and 15 of Title 22 of the Pennsylvania Code.

22.    At all times relevant to the Complaint, Defendant Valley Day School was operating as an agent of the Defendant School District.

## III.    Jurisdiction and Venue

23.    This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this case raises federal questions under Title IX, Section 504, the ADA, Section 1983, and the United States Constitution. This Court has supplementary jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367(a). The amount in controversy, exclusive of interest and costs, exceeds $150,000.

24.    Plaintiffs are not required to exhaust administrative remedies to pursue this Civil Action.

25.    Each of the Defendants' actions have taken place within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania.

26.    Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391.

## IV.    Applicable Federal Law

### A.    Title IX

27.    Title IX proscribes discrimination, exclusion, or denial of benefits on the basis of sex in educational institutions or programs which receive federal funding. 20 U.S.C. § 1681 ("No person in the United States shall, on the basis of sex, be excluded from participation in, be denied

the benefits of, or be subjected to discrimination under any education program or activity receiving

Federal financial assistance[.]”).

28.    The Supreme Court and the Third Circuit have repeatedly and unequivocally

recognized a private right of action to enforce Title IX, as well as a monetary damage remedy in

such private actions. *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S.

629, 640-41, 119 S. Ct. 1661 (1999) (money damages for student-on-student sexual

discrimination); *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 281, 118 S. Ct.

1989 (1988) (money damages for teacher-on-student sexual discrimination); *Jackson v.*

*Birmingham Bd. of Educ.*, 544 U.S. 167, 182, 125 S. Ct. 1497, 1509-10 (2005) (money damages

for retaliation claims under Title IX); *Hall v. Millersville University*, 22 F.4th 397, 404 (3d Cir.

2022) (money damages for deliberate indifference to sexual harassment by non-student guest on

campus); *M.S. by and through Hall v. Susquehanna Township School District*, 969 F.3d 120, 125

(3d Cir. 2020) (*citing Gebser*, 524 U.S. at 281).

29.    In *Gebser*, *supra*, the United States Supreme Court recognized that a recipient of

federal educational funds violated Title IX, and is subject to a private damages action, where the

recipient is “deliberately indifferent” to known acts of teacher-on-student discrimination.

30.    Courts routinely award money damages for Title IX claims. *Charter Schools USA,*

*Inc. v. John Doe No. 93*, 152 So.3d 657, 312 Ed. Law. Rep. 953 (Fla. 3d DCA 2014) (Jury awarded

$5,250,000 to a student (seven years old) who brought a Title IX claim for the charter school’s

deliberate indifference to sexual abuse as well as a negligent supervision tort claim, after he was

raped by a classmate (11 years old) and then attempted suicide.) A jury awarded $6 million to a

child who was sexually abused by a teacher during her junior and senior years in high school. See

*Doe v. School Board of Miami-Dade, Florida*, 521 F. Supp. 3d 1242 (S.D. Fla. 2019) (opinion

denying school district's summary judgment motion, permitting Title IX and Section 1983 claims to go to trial); see also *Doe v. Southeast Delco School District*, 2018 WL 6576590 (E.D. Pa. 2018) ($200,000 jury award (and $269,926.90 in attorney's fees and $35,038 in costs) for two plaintiffs' Title IX and Section 1983 actions against teacher who inappropriately touched them by placing the girls' hands on his lap near his penis and by placing his hands on the girls' bodies on several occasions).

### B.     Discrimination and Denial of Benefits under Section 504

31.     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits the exclusion of, or discrimination against, "handicapped persons" in federally funded programs. Plaintiff Vincent is such a "handicapped person" as he is a person with disabilities.

32.     To state a claim under Section 504, a plaintiff must allege facts showing that: (1) he is an "individual with a disability" as defined under the statute; (2) he is "otherwise qualified" for participation in the program or the benefit denied; (3) the program receives "federal financial assistance;" and (4) he was "excluded from the participation in," "denied the benefits of," or "subjected to discrimination" in the program "solely by reason of her or his disability." *Id.*

33.     Compensatory damages are available for a Section 504 or ADA violation when the defendant's conduct demonstrates deliberate indifference. *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018).

34.     Deliberate indifference is "knowledge that a federally protected right is substantially likely to be violated," and that the defendant "fail[ed] to act despite that knowledge." *S.H. ex rel Durrell v. Lower Merion School Dist.*, 729 F.3d 248, 265 (3d Cir. 2013). The failure to act in the face of the requisite knowledge involves "a deliberate choice, rather than negligence or bureaucratic inaction," but it "does not require a showing of personal ill will or

animosity toward the disabled person." *Id.* at 263 (internal quotations omitted).

35.    Notably, a plaintiff "need not establish that there has been an intent to discriminate in order to prevail under Section 504." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1384 (3d Cir. 1991). Rather, "[t]hey 'may circumstantially allege that [the student] was discriminated against . . . by alleging facts that could be interpreted to show bad faith or gross misjudgment.'" *Beam v. Western Wayne School District*, 165 F. Supp. 3d 200, 211 (M.D. Pa. 2016).

36.    Recovery is available under Section 504 where entities charged with the care of persons with disabilities fail to properly provide or supervise that care, and physical injury results. *Enright v. Springfield Sch. Dist.*, 2007 WL 4570970 at *10-11 (E.D. Pa. Dec. 27, 2007) (jury award of $400,000 pursuant to Section 504 and ADA); *Susavage v. Bucks Cty. Intermediate Unit 22*, 2002 WL 109615 at *20 (E.D. Pa. Jan. 22, 2002) (Section 504 damages claim where a public agency allowed the improper use of a harness for an orthopedically impaired child); *Ebonie S. v. Pueblo Sch. Dist. 60*, 2015 WL 4245831 at *1 (D. Colo. July 14, 2015) (family awarded $2.2 million in damages and an additional $900,000 in attorney's fees for Section 504 and ADA claims where the school district caused emotional distress to a special needs kindergartener by frequently using a "wrap-around" desk, which functioned essentially like a cage); *Lawton v. Success Acad. of Fort Green*, 2021 WL 911981 at *2-*3 (E.D.N.Y. Mar. 10, 2021) (charter school subjected five-year-old students to overly harsh discipline, including excluding them from school and calling the police; although students were not physically injured, five plaintiffs accepted an offer of judgment of $1.1 million; court awarded $1.3 million in fees).

## C.    Discrimination under the ADA

37.    Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff Vincent is such an individual with disabilities.

38.    Section 12132 of the ADA "extends the nondiscrimination rule of [Section 504] to services provided by any 'public entity' (without regard to whether the entity is a recipient of federal funds)." *Jeremy H. v. Mount Lebanon School Dist.*, 95 F.3d 272, 279 (3d Cir. 1996).

39.    The ADA's causation standard is lower than the Section 504 standard and does not require the disability to be the "sole cause" of the discrimination or denial of benefits; rather "the ADA only requires 'but-for' causation," i.e., but for the disability, there would be no discrimination or denial of benefits. *Furgess v. Pa. Dep't. Of Corr.*, 933 F.3d 285 (3d Cir. 2019).

**D.    Section 1983 Claim for Deprivation of Rights Secured by Title IX and the ADA**

40.    "[A]ny person within the jurisdiction of the United States may invoke . . . [a Section 1983 claim] against any other person who, acting 'under color of' state law, has deprived them of 'any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Health and Hospital Corporation of Marion County v. Talevski*, 599 U.S. 166, 175, 143 S. Ct. 1444, 1452 (2023) (*citing* 42 U.S.C. § 1983).

41.    "Section 1983 can presumptively be used to enforce unambiguously conferred federal individual rights, unless a private right of action under § 1983 would thwart any enforcement mechanism that the rights-creating statute contains for protection of the rights it has created." *Id.* at 171 (*citing inter alia Fitzgerald v. Barnstable School Comm.*, 555 U.S. 246, 253-55, 129 S. Ct. 788 (2009)).

42.    Where a statute "has no administrative exhaustion requirement and no notice provisions" a party may bring a Section 1983 claim against the state actor even if the statute permits a private right of action for compensatory damages and equitable relief. *Fitzgerald*, 555

U.S. at 255, 129 U.S. at 795-96.

43.    The Supreme Court permits a Section 1983 action to enforce a Title IX claim. *Id.*

44.    Furthermore, the Supreme Court's recent decision in *Talevski*, *supra*, expands the use of Section 1983 and permits the Plaintiffs to bring a Section 1983 claim to enforce the ADA against the Defendants.

45.    Under the *Talevski*, *supra*, framework, a Section 1983 action can be used to enforce the ADA against a state actor because: (1) Congress did not intend the ADA to be the "exclusive avenue" to enforce the rights of people with disabilities; (2) an action under the ADA is not "more restrictive" than a Section 1983 claim; (3) a Section 1983 claim is not "incompatible" with an ADA claim; and (4) a Section 1983 claim would not thwart an ADA claim. *See Talevski*, 599 U.S. at 171, 187-88, 143 S. Ct. at 1450, 1459-60.

**E.    Section 1983 Claim for Municipal Liability (*Monell* claim)**

46.    Where a plaintiff is subjected to sex-based discrimination, the plaintiff may use Section 1983 to enforce the Equal Protection Clause of the Fourteenth Amendment. *Fitzgerald*, *supra*, 555 U.S. at 257-58, 129 S. Ct. at 797.

47.    The plaintiff asserting such a Section 1983 claim for violation of the Equal Protection Clause by a school district must show that the harassment was the result of municipal custom, policy, or practice. *Id.* (citing *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 694, 98 S. Ct. 2018 (1978)).

48.    Official policy includes formal policy, acts of official policymakers and "practices so persistent and widespread as to have the force of law." *Connick v. Thompson*, 563 U.S. 51, 60, 131 S. Ct. 1350 (2011) (collecting cases) (internal quotation omitted). "These are 'actions for which the municipality is actually responsible.'" *Id.* (quoting *Pembaur v. City of Cincinnati*, 475

U.S. 469, 479-80, 106 S. Ct. 1292 (1986)).

49.     "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (internal quotation omitted).

50.     Custom, in contrast, can be proven by demonstrating that a given course of conduct, although not specifically endorsed or authorized by state or local law, is so well-settled and permanent as virtually to constitute law. *Id.* (citing *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989) ("Custom may be established by proof of knowledge and acquiescence."), *cert. denied*, 492 U.S. 919, 109 S. Ct. 3244 (1989)).

## V.     Factual History

51.     Vincent is a now-17-year old student of the Defendant Pennsbury School District. He was born in 2007.

52.     At all times Vincent was and is a resident of the Defendant Pennsbury School District which maintained educational responsibilities for him under the statutes identified herein.

53.     Defendant School District was Vincent's Local Education Agency when he was sexually assaulted by Derolf.

54.     The legal guardians and custodians of Vincent are his Grandparents, John H. and Tracey H., who have assumed authority over decision-making in educational matters for Vincent.

55.     At all relevant times, Vincent was diagnosed as a student with Emotional Disturbance.

56.     He was a previous victim of abuse and the vulnerable type of child who is frequently targeted for sexual abuse by trusted adults.

57.    Vincent was physically and verbally abused by his father who was in and out of prison and later abandoned his family.

58.    His mother and material grandmother were both diagnosed with schizophrenia, and his mother was addicted to methamphetamines.

59.    He has 11 half-sisters that he knows of.

60.    He lived in both foster care and homeless shelters and was physically abused in foster care.

61.    After his paternal grandfather bought a mobile home for Vincent's mother, his father returned.

62.    Vincent's mother and father both began using drugs again and then one day dropped Vincent at his grandparents' home and left for Florida.

63.    Vincent attempted suicide in 2016 at age nine and spent two weeks in a crisis center.

64.    Due to his history of significant mental health issues and trauma, the Defendant Pennsbury School District placed Vincent at Defendant's Valley Day School for the school year commencing September 2018.

65.    The Defendant Valley Day School is a private educational setting licensed by the Pennsylvania Department of Education and identified by it as an "Approved Private School" to provide special education for emotionally disturbed students who cannot be properly and adequately served in a local school district.

66.    An Approved Private School is required to implement IEPs and its curriculum is approved by the Pennsylvania Secretary of Education and is thereby eligible to receive some state funding for tuition. *See* 22 Pa. Code § 171.11 (definition of Approved Private School).

67.    Because Defendant School District was aware of Vincent's significant emotional

needs and past history of trauma, it used Defendant Valley Day School as its agent to address his needs and implement his IEP.

68.     Prominent among Vincent's disability-related needs, and as repeatedly noted in his IEPs and school records from 2019 to 2022, was that "the language he uses is very sexual and inappropriate for a school setting."

69.     Indeed, the last IEP completed at the Defendant Valley Day School—with Defendant Pennsbury School District officials participating—before Vincent was sexually assaulted, included such a reference, as did the first IEP created by Defendant Pennsbury School District and the Defendant Valley Day School after the assaults and suicide described herein. *See* 5/7/21 IEP; *see also* 9/11/21 IEP.

70.     Derolf began grooming Vincent in the beginning of the 2020-2021 school year, which began virtually because of the COVID-19 pandemic.

71.     In the fall of 2020, the Defendants used Zoom and other video conferencing software for virtual lessons.

72.     Derolf would participate on the Zoom lessons, however, as the teacher's aide she did not run the lesson.

73.     After the Zoom lessons concluded, Derolf would ask Vincent to remain in the Zoom classroom and the two would talk one-on-one for up to an hour after everyone logged off.

74.     Vincent's teacher knew or should have known that Derolf and Vincent stayed on-line inappropriately together for extended periods of time after the lesson to talk privately.

75.     The Defendants had a custom, policy, or practice that permitted Derolf to have unsupervised one-on-one conversations with Vincent over Zoom after the lesson ended.

76.     These one-on-one conversations on Zoom lasted from about September 2020 until

about January 2, 2020.

77.    The students returned to in-person education on or about January 2, 2021.

78.    At the Defendant Valley Day School, when students are emotionally dysregulated they go to a room to speak with an administrator, teacher, and/or counselor who acts as both a counselor and/or disciplinarian to help the student regain his composure (hereinafter, the "therapy room").

79.    Vincent rarely attended the therapy room.

80.    Instead, Derolf and Vincent would take long walks together in the school or around the school grounds.

81.    It was unusual for a student to go on one-on-one walks with teachers or aides.

82.    Derolf told Vincent that at least one teacher at the Defendant Valley Day School told Derolf that their walks were "weird." Said teacher asked Derolf why they went on walks instead of Vincent using the therapy room.

83.    The Defendants had a custom, policy, or practice that permitted Derolf to have unsupervised one-on-one walks with Vincent.

84.    In the spring of 2021, Derolf encouraged Vincent to download a messaging app on his phone called "Discord," which would delete their text messages after they were sent.

85.    The Defendants had a custom, policy, or practice of failing to train employees or agents in how to appropriately communicate with students.

86.    The May 7, 2021, IEP stated that "The IEP team met on 5/5/21 to discuss Vincent's return to the district. Vincent will begin transitioning to district by participating in Defendant Pennsbury School District's ESY [Extended School Year] program offered at Pennwood Middle School.  Defendant Pennsbury School District's IEP team will convene in the summer to discuss

Vincent's fall placement."

87.    However, Defendant Pennsbury School District's Notice of Recommended Educational Placement of May 5, 2021, stated that while ESY would occur at Defendant Pennsbury School District, Vincent would return to Defendant Valley Day School for the upcoming 2021-2022 school year.

88.    The last day of instruction at Defendant Valley Day School was June 11, 2021, and Defendant Pennsbury School District's ESY began on July 6, 2021, and ran through August 5, 2021.

89.    During spring of 2021, Derolf began sending sexually suggestive and explicit communications to Vincent via cell phone using the Discord app.

90.    The two began going out to eat and eventually Derolf began kissing him.

91.    She introduced him to marijuana.

92.    Derolf would sometimes drive Vincent home from school or to her house to play video games with her kids.

93.    Derolf always possessed a handgun in her vehicle.

94.    The Defendants had a custom, policy, or practice of permitting employees or agents to drive students away from school in their private vehicles, unsupervised.

95.    In early June 2021, the grooming and meetings initiated by Derolf with Vincent became romantic in nature, and they had sexual intercourse three times in July 2021, twice in the area of the Levittown Lake in Tullytown Borough and once near a baseball field in Bristol Township.

96.    Derolf carried and displayed a gun with her at all times during these meetings. Vincent reported that since "day one" he knew the assistant teacher had a gun on her, and that it

made him feel "not good, but not too uneasy . . . I always knew it was there, and she always made sure I knew it was there."

97.     Based on information from Vincent's caretakers, a police investigation began on July 13, 2021, and on July 15, 2021, Derolf confessed to her sexual assault crimes against Vincent and she was charged with involuntary deviate sexual intercourse, institutional sexual assault, statutory sexual assault, unlawful contact with a minor, aggravated indecent assault, indecent assault, and corruption of minors. Derolf was remanded to the Bucks County Correctional Facility under $900,000 bail. However, Derolf needed to post only 10% of that figure to be released, thus making her release likely.

98.     These criminal sexual acts constituted the felonies of Statutory Sexual Assault, Involuntary Deviate Sexual Intercourse and related felonies due to Vincent's age and were subsequently charged as such by local police upon the apprehension of Derolf.

99.     Because the arrest and bail status of Derolf were extensively reported these horrific events of sexual assault upon a child were known immediately to both of the Defendants.

100.     Despite this knowledge, and despite Vincent's obvious vulnerability and serious educational, mental health, and therapeutic needs, neither of the Defendants took any meaningful steps as required by the federal laws cited herein to address his vulnerabilities.

101.     Therefore, Vincent remained completely vulnerable to continued contact, grooming, sexual assault, and trauma at the hands of Derolf.

102.     No steps were taken to reevaluate Vincent, to otherwise assess his increasing and immediate emotional needs or to modify his IEP.

103.     The Defendant Pennsbury School District's IEP team did not meet as promised during the summer of 2021 despite the Defendant School District's May 5, 2021, commitment to

do so and further despite the horrific events which occurred to Vincent during that summer.

104.    Incredibly, Defendant School District did not even have an IEP in place for Vincent on the first day of school as required by the IDEA.

105.    The Defendants further failed to take the immediate investigative and remedial steps required by Title IX to investigate this matter and to provide prompt protective and supportive measures to assist Vincent and to protect him from further contact from Derolf, which predictably occurred.

106.    The Defendant School District did not evaluate Vincent to identify his needs in the wake of being sexually abused by a trusted educator of its agent, as it had promised to do, and despite his presence in its summer school program.

107.    On July 23, 2021, Derolf's bail was reduced to $100,000/10%, which was immediately posted, and she was released.

108.    Derolf immediately again began to connect with Vincent via his cell phone and to meet with him secretly.

109.    On August 22, 2021, based on information from a neighbor, Vincent's family again contacted the Falls Township Police and reported that they had learned that he might rendezvous with Derolf that day near the area of Old Bristol Pike and Wheatsheaf Lane around 4:15 PM.

110.    Police responded to the scene, and as police approached Derolf and Vincent, she pulled out a handgun, told Vincent to run, and quickly shot herself to death with a blast to the head as Vicent ran a short distance away.

111.    Derolf made no attempt to hide her suicide from Vincent.

112.    As a result of this horrific series of events, Vincent has suffered, and continues to suffer, physical, emotional, mental, and psychological harms; the trauma inflicted upon him by

these events could and should have been avoided through the appropriate, necessary, and timely interventions required under the federal laws cited herein, and their state law counterparts.

113.   Vincent is now also diagnosed with Post-Traumatic Stress Disorder (PTSD).

114.   PTSD can cause lifelong physiological changes to the brain, including, but not limited to, changes to the hippocampus and amygdala as well as cortical regions including the anterior cingulate, insula, and orbitofrontal region of the brain.

115.   PTSD is a serious, lifelong physical, emotional, and psychological injury.

116.   Because of his PTSD he is at a major lifelong increased risk of harm to develop even more severe PTSD with its attendant consequences, which can occur at any time through adulthood due to the traumas identified in this Complaint.

117.   Vincent has not recovered and will likely never recover from this abuse and discrimination.

118.   Derolf's grooming of Vincent was so successful that even after sexually assaulting him multiple times, after Derolf's arrests, after she killed herself in his presence, and after nation-wide condemnation of this sexual abuse, Vincent feels guilt for her death.

119.   The Defendants were on notice of the incidents of sexual assault and abuse described herein as of the date of the arrest of Derolf.

120.   Although on notice of the sexual assaults and abuse described herein, the Defendants failed to: (a) inform Vincent of his rights under Title IX; (b) initiate the mandatory Title IX investigation and grievance processes; (c) take reasonable, effective, and swift action to provide supportive and protective measures to Vincent; (d) prevent the recurrence of sexual assaults and abuse; (e) implement corrective measures; or (f) provide increased security measures.

121.   In addition, although on notice of Vincent's past history of trauma, psychological

and emotional needs, inability to respond appropriately to sexual situations, and Derolf's sexual grooming and abuse and the obvious, serious psychological trauma that would flow from such abuse, the Defendants failed to: (a) implement a special education reevaluation, (b) amend Vincent's Specially Designed Instruction; (c) update the present levels or goals of his IEP; (d) provide him with increased accommodations and Related Services, counseling, instruction in self-advocacy and self-protection, or family training; (e) implement available steps to prevent electronic and other communications or contacts from Vincent's abuser; (f) provide increased security despite knowledge that Derolf could post bail, and (g) monitor Derolf's bail status.

122.    Indeed, in June 2021, the Defendants took no action whatsoever under Title IX, Section 504, or the ADA in response to their notice that Derolf sexually abused Vincent or that Derolf's bail was only $10,000.

123.    In July of 2021, the Defendants took no action whatsoever Title IX, Section 504, or the ADA even when they learned Derolf posted bail.

124.    Vincent's mental, emotional, academic, functional, and physical well-being suffered greatly as a result of the sexual harassment and abuse he endured as described herein.

125.    The Defendants ignored their obligations to respond to discrimination under Title IX, the ADA, Section 1983, Section 504, and the Equal Protection Clause of the Fourteenth Amendment, and thus failed Vincent through their deliberate indifference, gross misjudgment, and/or policies, practices, or customs.

126.    These criminal acts upon Vincent and the horrific continued grooming and subsequent suicide of Derolf in Vincent's presence were the direct result of: the failure of Defendant Valley Day School to adequately train, supervise, monitor, and oversee its staff, most notably Derolf; the repeated failures of all Defendants to provide within Vincent's educational

plans adequate direct instruction, therapeutic programming, and skill development to self-advocate and recognize improper and criminal sexual advances upon him; and the Defendants' collective failures to provide appropriate family training for Vincent's caretakers to assist them in addressing Vincent's critical needs in these areas, especially regarding the use of his cell phone and applications to connect with predators such as Derolf in light of his extensive emotional needs and history of experiencing major trauma.

127.    Under well-established decisions of the United States Court of Appeals for the Third Circuit, these duties on the part of all Defendants were non-delegable and were the full and undivided responsibility of each Defendant. 20 U.S.C. § 1412(a)(10)(B); *P.N. v. Greco*, 282 F. Supp. 2d 221, 238 (D.N.J. 2003) ("[S]tate and local educational authorities are ultimately responsible for ensuring that a student's rights under IDEA are protected, and they cannot divest themselves of that responsibility by placing a child in a private school.").

## VI.    Claims

### Count I
### Deliberate Indifference to Sex-Based Discrimination
### in violation of Title IX, 20 U.S.C. § 1681, et seq.
### (Vincent C. v. Defendants)

128.    Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

129.    Vincent was a victim of repeated sexual assaults and abuse, together with subsequent unspeakable trauma that occurred due to the actions and omissions of the Defendants.

130.    Vincent was sexually abused by an employee and/or agent of the Defendants.

131.    The Defendants failed to respond with a prompt, thorough and comprehensive investigation with immediate effective corrective measures after receipt of notice that repeated sexual communications/contacts, some of which occurred during the school day, during a school

term, and on school property, as well as that subsequent sexual assaults had occurred, all of which created a hostile educational environment for an emotionally disturbed student with a history of major trauma.

132. Defendants' supervisory staff and employees, who had the power to investigate and to take immediate remedial/supportive steps to end the sexual contacts described herein, were on notice of said assaults and abuse described herein.

133. The Defendants failed to adequately respond to the sexual harassment and abuse, conduct any proper fact-finding or hearing process, and failed to implement any protective, supportive or corrective measures whatsoever.

134. The Defendants ignored their obligations to respond to the sexual harassment under Title IX, and thus failed Vincent through their deliberate indifference and gross misjudgment.

135. As a result of the Defendants' failures under Title IX, Vincent's education was impacted, and he suffered physical and emotional loss, mental torment, humiliation, and loss of relationships with friends and family members.

136. The Defendants did not have a publicly available and fully accessible Title IX investigative, supportive, grievance and appeal process.

137. The Defendants failed to timely advise Vincent or the public in general of the identity of the Title IX coordinator, his rights under Title IX, or his right to participate in the Title IX investigation and grievance processes under Title IX, as well as to receive supportive measures and to have corrective action swiftly taken.

138. The Defendants' actions and inactions were severe, pervasive, and objectively offensive.

139. As a result of the Defendants' discriminatory conduct, gross misjudgment, bad faith

and deliberate indifference, Vincent suffered significant harms and damages, including, but not limited to, being denied equal access and benefits to his education.

140.    As a result of the Defendants' gross misjudgment, bad faith, and deliberate indifference to known acts of sexual assault and abuse, the Defendants violated Title IX and caused Vincent humiliation, pain, and suffering.

141.    As a direct and proximate result of Defendants' violations of Title IX as set forth herein, Vincent was injured, and has suffered significant physical, mental, and emotional trauma, pain and suffering, separation from family and other relationships, humiliation, and loss of life's most basic pleasures. He has incurred and will continue to incur significant physical, emotional, and behavioral harm, medical/treatment bills, work loss, and humiliation, and is entitled to monetary damages stemming from the harms and injuries he has suffered due to Defendants' violations of Title IX.

**WHEREFORE**, Plaintiff Vincent C. demands judgment in his favor against Defendant, jointly and severally, for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs and such other and further relief as this Court deems just and proper.

<u>**Count II**</u>
**42 U.S.C § 1983 Claim for Enforcement of Title IX**
**(Vincent C. v. Defendants)**

142.    Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

143.    Both Defendants are municipal entities and/or state actors subject to suit pursuant to 42 U.S.C. § 1983.

144.    At all times material here, the Defendants acted under color of state law by and

through its agents, ostensible agents, and/or employees.

145.    The federal statutory rights prescribed by Title IX and violated by Defendants as set forth herein include the right to be free from discriminatory conduct.

146.    Defendants violated Vincent's rights secured by Title IX, by its actions and inactions which subjected Vincent to discrimination and denial of benefits, in violation of 20 U.S.C. § 1681.

147.    Title IX conferred onto Vincent an equal right to a safe education free from discriminatory treatment and/or loss of educational benefits.

148.    Defendants acted and failed to act with deliberate indifference, with gross misjudgment, or with bad faith, to the rights of Vincent.

149.    As a direct result of the actions of Defendants as set forth herein, Vincent suffered injuries and losses as described in this Complaint.

150.    As a direct and proximate result of Defendants' violations of Title IX and Section 1983 as set forth herein, Vincent was injured, and has suffered physical, mental, and emotional trauma, pain and suffering, separation from Family and other relationships, humiliation, and loss of life's most basic pleasures. He has incurred and will continue to incur significant physical, emotional, mental and behavioral harm, medical/treatment bills, work loss, and humiliation, and is entitled to monetary damages stemming from the injuries he has suffered due to Defendants' violations of Title IX and Section 1983.

**WHEREFORE**, Plaintiff Vincent C. demands judgment in his favor against Defendants, jointly and severally, for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs; punitive damages (against Defendant Valley Day School); and such other and further relief as this Court deems just and proper.

## Count III
### 42 U.S.C. § 1983 Claim for Enforcement of the Equal Protection Clause
### (Vincent C. v. all Defendants)

151.    Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

152.    A plaintiff who brings a Title IX claim for deliberate indifference to sex-based harassment or abuse, may also bring a claim for money damages under Section 1983 to enforce the Equal Protection Clause of the Fourteenth Amendment. *Fitzgerald*, *supra*, 555 U.S. at 256-57, 129 S. Ct. at 796.

153.    Both Defendants are state actor and/or a local or municipal entity acting under color of state law and thus are subject to suit under Section 1983.

154.    Plaintiff faced unconstitutional sex-based discrimination as a result of the Defendants' custom, policy, or practice. See *Monell v. New York City. Dept of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978).

155.    More specifically, the Defendants had customs, policies, and/or engaged in the practice of: (a) allowing aides to have unsupervised, one-on-one interactions with students, even those such as Plaintiff who was particularly vulnerable to sexual grooming, discrimination, and abuse; (b) permitting employees and agents, such as aides, to drive students away from campus, unsupervised; (c) failing to train its employees in how to identify, report, investigate, and/or quell sex-based discrimination; and/or (d) refusing to implement mandatory Title IX protections, such as the grievance process, investigation, and supportive and corrective measures.

156.    Plaintiff was denied a constitutional right to be free from sex-based discrimination because of the Defendants' policies or customs and as a result thereof was injured, as outlined herein.

157.    As a direct result of the actions of Defendants as set forth herein, Vincent suffered and continues to suffer injuries and losses as described in this Complaint.

158.    As a direct and proximate result of Defendants' violations of the Equal Protection Clause and Section 1983 as set forth herein, Vincent was injured, and has suffered and continues to suffer physical, mental, and emotional trauma, pain and suffering, separation from family and other relationships, humiliation, and loss of life's most basic pleasures. He has incurred and will continue to incur significant physical, emotional, mental and behavioral harm, medical/treatment bills, work loss, and humiliation, and is entitled to monetary damages stemming from the injuries due to Defendants' violations of the Equal Protection Clause and Section 1983.

**WHEREFORE**, Plaintiff Vincent C. demands judgment in his favor against Defendants, jointly and severally, for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs; punitive damages (against Defendant Valley Day School); and such other and further relief as this Court deems just and proper.

### Count IV
### Discrimination and Denial of Benefits under Section 504
### (Vincent C. v. Defendants)

159.    Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

160.    At all relevant times, the Defendants received federal financial assistance from several sources.

161.    Plaintiff Vincent is a handicapped person, i.e., considered disabled under Section 504 of the Rehabilitation Act.

162.    Despite his disabilities, at all times relevant to this Complaint, Plaintiff was otherwise qualified to attend Defendants' schools and programs with appropriate special education

programming, safe conditions, related services, accommodations and supplemental supports for purposes of Section 504.

163.    At all times relevant to this Complaint, Defendants knew of Plaintiff's disabilities and associated needs as described in this Complaint.

164.    The Defendants discriminated against Plaintiff on the basis of his disability and denied him the equal benefits of his educational program, by failing to provide him with a safe, appropriate, and properly supervised educational program with properly hired, trained, and supervised educational professionals where he would be free from sexual assault, abuse and trauma.

165.    The Defendants had the duty and responsibility to ensure that Plaintiff's educational program was safe, appropriate, and properly supervised with properly hired, trained and supervised staff.

166.    Plaintiff would not have been subjected to these injuries described in this Complaint if he had not been disabled.

167.    Plaintiff was deprived of the equal benefits of his educational program, and otherwise subject to discrimination, because of his disabilities.

168.    The Defendants acted with deliberate indifference, bad faith, and/or gross misjudgment and violated Plaintiff's rights secured by Section 504. 29 U.S.C. § 794; 34 C.F.R. §§ 104.4 and 104.7.

169.    "The Third Circuit has held that the inadequacy of training may itself serve as the basis for liability where it amounts to 'deliberate indifference.'" *Susavage v. Bucks County Schools Intermediate Unit No. 22*, 2002 WL 109615 at *7 (E.D. Pa. Jan. 22, 2002) (*citing Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)).

170.    "[T]o make out a claim of deliberate indifference based on direct liability (i.e., insofar as the defendants are alleged to have known of and ignored [a] particular risk . . .), the plaintiffs must . . . show that the defendants knew or were aware of and disregarded an excessive risk to the plaintiffs' health or safety, and they can show this by establishing that the risk was obvious." *Id.* (*quoting Beers-Capital v. Whetzel*, 256 F.3d 120, 135 (3d Cir. 2001) (internal quotation marks omitted)).

171.    As a direct and proximate result of Defendants' violations of Section 504 as set forth above, Plaintiff was injured, and has suffered physical, mental, and emotional trauma, pain and suffering, separation from family and other relationships, humiliation, educational harm and loss, and loss of life's most basic pleasures. He has incurred and will continue to incur significant physical, mental, emotional, and behavioral harm, work loss, monetary loss, medical/treatment bills, humiliation, and is entitled to monetary damages stemming from the injuries he has suffered due to Defendants' violations of Section 504.

172.    As a result of these violations, Plaintiff continues to suffer injuries and damages as described herein.

**WHEREFORE**, Plaintiff Vincent C. demands judgment in his favor against Defendants, jointly and severally, for compensatory damages and punitive damages (against Defendant Valley Day School) in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs and such other and further relief as this Court deems just and proper.

<u>**Count V**</u>
**Discrimination and Denial of Benefits under the ADA**
**(Vincent C. v. Defendants)**

173.    Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

174.     The requirements for a claim under the ADA are similar to Section 504, except that under the ADA, a plaintiff's disability need be only one factor in causing the denial of benefits or discrimination at issue and a lower standard of causation is applicable. *See* 29 U.S.C. § 794(a); *see also* 42 U.S.C. § 12132; *Helen L. v. DiDario*, 46 F.3d 325, 330 n.7 (3d Cir. 1995); *Furgess v. Pa. Dept. of Corr.*, 933 F.3d 285 (3d Cir. 2019).

175.     As set forth above, Defendants violated Section 504; thus, Defendants also violated the ADA.

176.     Plaintiff is a handicapped person, i.e., considered disabled under the ADA.

177.     At all times relevant to this Complaint, Defendants knew of Plaintiff's disabilities and associated needs as described in this Complaint, including but not limited to, his emotional disturbance and trauma.

178.     Despite his disabilities, at all times relevant to this Complaint, Plaintiff was otherwise qualified to attend Defendants' schools and programs with appropriate instruction, Related Services, accommodations and supplemental supports for purposes of the ADA.

179.     The Defendants discriminated against Plaintiff on the basis of his disability and denied him the equal benefits of his educational program by failing to provide him with a safe, appropriate, and properly supervised educational program where he would be free from harm.

180.     The Defendants had the duty and responsibility to ensure that Plaintiff's education was free of abuse and harassment at school, that he was not subjected to a hostile educational environment, and that he possessed the self-advocacy skills needed to respond to abuse and harassment.

181.     Plaintiff would not have been subjected to these injuries described in this Complaint if he had not been disabled.

182.    Plaintiff was deprived of the equal benefits of his educational program, and otherwise subject to discrimination, because of his disabilities.

183.    Defendants violated Plaintiff's rights secured by the ADA and 28 C.F.R. § 35.130, by its actions and inactions which: (a) subjected Plaintiff to discrimination, in violation of 28 C.F.R. § 35.130(a); and (b) limited Plaintiff in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving the aid, benefit, or service, in violation of 28 C.F.R. § 35.130(b)(1)(vii).

184.    The Defendants acted with deliberate indifference, bad faith, and/or gross misjudgment and/or violated Plaintiff's rights secured by the ADA.

185.    As a direct and proximate result of Defendants' violations of the ADA as set forth above, Plaintiff was injured, and has suffered physical, mental, and emotional trauma, pain and suffering, separation from family and other relationships, humiliation, educational harm and loss, and loss of life's most basic pleasures. He has incurred and will continue to incur significant physical, mental, emotional, and behavioral harm, work loss, monetary loss, medical/treatment bills, humiliation, and is entitled to monetary damages stemming from the injuries he has suffered due to Defendants' violations of the ADA.

186.    As a result of these violations, Plaintiff continues to suffer injuries and damages as described herein.

**WHEREFORE**, Plaintiff Vincent C. demands judgment in his favor against Defendants, jointly and severally, for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs; punitive damages (against Defendant Valley Day School); and such other and further relief as this Court deems just and proper.

<u>**Count VI**</u>
**42 U.S.C. § 1983 Claim for Enforcement of the ADA**

**(Vincent C. v. all Defendants)**

187.    Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

188.    All Defendants are municipal entities and/or state actors subject to suit pursuant to 42 U.S.C. § 1983.

189.    At all times material here, all Defendants acted under color of state law by and through its agents, ostensible agents, and/or employees.

190.    A private citizen, including Plaintiff, can seek relief under Section 1983 to enforce the ADA because the ADA has no exhaustion requirement and does not have an "unusually elaborate," "carefully tailored," and "restrictive" enforcement scheme. *Talevski*, 599 U.S. at 171, 187-88, 143 S. Ct. at 1450, 1459-60.

191.    The federal statutory rights prescribed by the ADA and violated by Defendants as set forth herein include the right to be free from discriminatory conduct.

192.    Defendants violated Plaintiff's rights secured by ADA, by its actions and inactions which (a) subjected Plaintiff to discrimination and denial of benefits, in violation of 28 C.F.R. § 35.130(a); (b) limited and denied Plaintiff in the enjoyment of his rights, privileges, advantages, or opportunities enjoyed by others receiving the aid, benefit, or service, in violation of 28 C.F.R. § 35.130(b)(1)(vii).

193.    The Defendants were on notice of the potential for Plaintiff's emotional and physical injury as a a result of the Defendants' knowledge of sexual assaults and abuse that was occurring upon Vincent by Derolf.

194.    The ADA confers onto Plaintiff an equal right to a safe education free from discriminatory treatment and/or loss of educational benefits.

195.    The actions of the Defendants violated rights that the ADA afforded Plaintiff as a student with a disability.

196.    Defendants acted intentionally, with deliberate indifference, with gross misjudgment, or with bad faith, to the federally protected rights of Plaintiff.

197.    As a direct result of the actions of Defendants as set forth herein, Plaintiff was caused to suffer the injuries and losses as described in this Complaint.

**WHEREFORE**, Plaintiff Vincent C. demands judgment in his favor against Defendants, jointly and severally, for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs; punitive damages (against Defendant Valley Day School); and such other and further relief as this Court deems just and proper.

**Count VII**
**Loss of Consortium**
**(Grandparent Plaintiffs v. all Defendants)**

198.    Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

199.    A loss of consortium claim is a distinct cause of action, and is what is known as a "derivative" claim. *Darr Const. Co. v. W.C.A.B. (Walker)*, 552 Pa. 400, 408, 715 A.2d 1075, 1079-80 (1998); *see also Oare v. York County*, 768 F.2d 503, 509 n.7 (3d Cir. 1985); *McCurdy v. Dodd*, 352 F.3d 820, 830 (3d Cir. 2003); *White v. City of Vineland*, 2022 WL 16637823 at *1 (D.C. N.J. 2022) (Parents whose minor or unemancipated child has been injured as a result of unlawful state actions has a Section 1983 action for a denial of their due process interest in the companionship of their minor child).

200.    As a result of the Defendants discriminatory conduct, gross misjudgment, bad faith, and deliberate indifference, all Plaintiffs suffered damage, including, but not limited to, the injuries

and harms set forth herein, being denied equal access to Vincent's education, which greatly affected and harmed his entire family mentally and emotionally, including his Grandparents.

201.    As a result of the Defendants discriminatory conduct, gross misjudgment, bad faith, and deliberate indifference to known acts of sexual harassment, the Defendants violated Title IX, Section 504, the ADA, and/or Section 1983 and state law.

202.    Vincent's entire family has endured tremendous emotional pain and suffering, trauma to their personal relationships, as well as economic harm.

203.    Grandparent Plaintiffs seek redress for the loss and denial of their rights to the comfort, companionship and society (i.e., consortium) of their grandson as a consequence of the Defendants' continual failures to comply with federal and state law as referenced herein.

204.    Grandparent Plaintiffs seek redress for the loss and denial of their rights to the comfort, companionship and society (i.e., consortium) of one another as a consequence of the Defendants' continual failures to comply with federal and state law as referenced herein.

205.    The harms Vincent and his family have experienced from the violations of federal and state law by the Defendants as described herein all occurred in violation of Section 504, the ADA, Title IX, and/or Section 1983.

206.    Grandparent Plaintiffs have been, continue to be, and in the future will be deprived of the assistance and companionship of their grandson and one another, all of which has been, continues to be, and in the future will be, to their great detriment and loss.

**WHEREFORE**, Grandparent Plaintiffs demand judgment in their favor against Defendants, jointly and severally, for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs; punitive damages (against Defendant Valley Day School); and such other and further relief as this Court deems just and proper.

## Count VII
### Negligence
### (Plaintiff Vincent C. v. Valley Day School)

207.    Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

208.    At all times relevant to this Complaint, Defendant Valley Day School knew that: (a) Vincent was a student with disabilities and knew of Vincent's associated needs as described in this Complaint; (b) it was obliged to provide him with a safe, appropriate, and properly supervised educational program and environment; (c) the hiring, assignment, training and supervision of staff for Vincent was an inherently critical undertaking in light of his vulnerabilities stemming from his disabilities and his history as a victim of trauma; (d) Vincent's disabilities required that he be supervised and monitored carefully and only proper personnel assigned to him; and (e) Vincent's disabilities made him more vulnerable and susceptible to abuse and injury

209.    At all times relevant to this Complaint, Defendant Valley Day School had a duty under Pennsylvania law and federal and state statutes and regulations to appropriately supervise and educate Vincent; to ensure that his program was safe, appropriate, properly staffed, and supervised by appropriately trained and qualified individuals, and free from unreasonable and foreseeable risks of harm; to hire, train, supervise, discipline, staff, and retain employees who could provide safe, secure, and adequate supervision of Vincent; and to refrain from taking or omitting unreasonable actions that would cause harm to Vincent.

210.    At all times relevant to this Complaint, Defendant Valley Day School breached its duty to provide Vincent a safe, secure, and properly staffed program with reasonable care for the heightened needs of its students with disabilities, including Vincent.

211.    At all times relevant to this Complaint, Defendant Valley Day School breached

its duty to adequately hire, train, supervise, and discipline its staff and its program.

212.    The Defendant Valley Day School owed Vincent a duty of care to prevent the conduct alleged herein, because, under the same or similar circumstances, a reasonable, prudent, and careful person should have anticipated that injury to Vincent or to those in a like situation would likely result from the foregoing conduct and inactions.

213.    Defendant Valley Day School acted with negligence, gross negligence, recklessness and/or indifference to the health and safety of Plaintiff Vincent and is liable for one or more of the following acts or omissions amounting to negligent or reckless conduct:

       a.      Failing to properly hire and train employees;

       b.      Failing to supervise Vincent's assigned staff;

       c.      Failing to adequately protect Vincent;

       d.      Failing to continually monitor and address the overall safety of its pupils;

       e.      Failing to respond in any way consistent with its obligations under federal and state law to immediately investigate and provide protective or supportive measures to Vincent and his family upon learning that he had been sexually assaulted on multiple occasions by its employee; and,

       f.      Failing to properly train its staff on how to supervise children with disabilities who are vulnerable to sexual advances; to train its students on how to repel such advances; and of the inherent wrongfulness of adult-on-child/student sexual relations.

214.    Plaintiff Vincent's injuries were caused by Defendant Valley Day School's acts or omissions which were negligent, grossly negligent, reckless, and/or indifferent with respect to the care, custody, or control of a disabled and previously-traumatized student.

215.    The actions and inactions of Defendant Valley Day School created an unreasonable

risk of harm.

216.    Defendant Valley Day School  had a duty to protect Vincent, violated that duty as set forth herein, and its actions/inactions constituted negligence, gross negligence, actual malice, recklessness, outrageous conduct, and/or was done willfully, wantonly, and/or with reckless indifference to Vincent's rights and to the health and safety of Vincent, and its acts or omissions were the proximate cause of Plaintiff Vincent'S injuries which constitute negligence, gross negligence, actual malice, recklessness, and/or indifference in these and other ways as discovery may reveal.

217.    As a proximate result of the above-described conduct, Plaintiff Vincent has suffered and continues to suffer physical injury, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling. He is now diagnosed with Post-Traumatic Stress Disorder (PTSD) and is at manifestly increased risk of harm in the form of even more severe Post-Traumatic Stress Disorder which can occur from trauma such as he experienced at any time throughout his life.

218.    Defendant Valley Day School's acts and omissions in failing to protect a child entrusted to their care shocks the conscious.

**WHEREFORE**, Plaintiff Vincent C. demands judgment in his favor against Defendant Valley Day School for compensatory and punitive damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs and such other and further relief as this Court deems just and proper.

**<ins>Count VIII</ins>**
**Breach of Fiduciary Duty**
**(Plaintiff Vincent C. v. Defendant Valley Day School )**

219.    Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

220.    A fiduciary relationship existed between Defendant Valley Day School, including its employees, agents, and officers, and Vincent, in that Vincent reposed a special confidence in Defendant Valley Day School to the extent that Vincent and Defendant Valley Day School did not deal with each other on equal terms, due to Vincent's disabilities, as well as his dependence and justifiable trust on Defendant Valley Day School and its personnel.

221.    Defendant Valley Day School breached that duty through its actions as set forth herein.

222.    As a direct and proximate result of Defendant Valley Day School breach of its fiduciary duty, Vincent was injured, has suffered and continues to suffer severe, horrific, debilitating, lifelong emotional trauma, separation from family and other relationships, and loss of life's most basic pleasures.

223.    Vincent has incurred and will continue to incur significant physical, emotional, behavioral harm and monetary damages stemming from the injuries he has suffered and continues to suffer due to Defendant Valley Day School's breach of its fiduciary duty.

**WHEREFORE**, Plaintiff Vincent demands judgment in his favor against Defendant Valley Day School for compensatory and punitive damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs and such other and further relief as this Court deems just and proper.

**Count IX**
**Negligent Infliction of Emotional Distress**
**(Plaintiff Vincent C. v. Defendant Valley Day School)**

224.    Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each

was set forth herein at length.

225.    Defendant Valley Day School negligently caused severe emotional distress to the Plaintiff Vincent C. through extreme and outrageous conduct.

226.    Defendant Valley Day School actions and omissions were so outrageous in character, and so extreme in degree, as to go beyond bounds of decency, and to be regarded as atrocious and intolerable in a civilized community.

227.    Plaintiff Vincent'S injuries were caused by Defendant Valley Day School's negligent acts and omissions with respect to the care, custody, or control of its staff and students.

228.    The Defendant Valley Day School's negligent acts and omissions with respect to the care, custody, or control of its staff and students created unreasonable risks of harm.

229.    The aforesaid injuries and harm to Vincent were caused by the negligent conduct and actual malice of the Defendant Valley Day School.

**WHEREFORE**, Plaintiffs demand judgment in his favor against Defendants for compensatory and punitive damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs and such other and further relief as this Court deems just and proper.

**VII.    JURY DEMAND**

230.    Plaintiffs demand a jury of 12 persons on all claims herein stated.

**WHEREFORE**, the Plaintiffs respectfully request the Court order judgment in their favor as follows:

A.    assume jurisdiction over this action;

B.    declare the Defendants' actions and omissions to be violative of Title IX, Section 504, the ADA, Section 1983, the Equal Protection Clause, and Pennsylvania law;

C.    order an amount of damages to be determined at trial;

D.    order punitive damages against Defendant Valley Day School;

E.    order the Defendants to pay Plaintiffs their reasonable attorneys' fees and related

costs; and

F.    grant such other relief as this Court deems proper.

Respectfully submitted,

/s/*Dennis C. McAndrews*
Dennis C. McAndrews, Esq.
Attorney ID 28012
McAndrews, Mehalick, Connolly,
Hulse and Ryan, P.C.
30 Cassatt Avenue
Berwyn, PA 19312
dmcandrews@mcandrewslaw.com

/s/*D. Daniel Woody*
D. Daniel Woody, Esq.
Attorney ID 309121
McAndrews, Mehalick, Connolly,
Hulse and Ryan, P.C.
30 Cassatt Avenue
Berwyn, PA 19312
dwoody@mcandrewslaw.com

/s/*Scott A. Portner*
Scott A. Portner, Esq.
Attorney ID 85314
Freedman & Lorry, P.C.
1601 Market Street
Philadelphia, PA 19103
sportner@freedmanlorry.com

Attorneys for Plaintiffs